IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| TEDDY GOODWINE, ) | Civil Action No. 3:08-3829-JFA-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **REPORT AND RECOMMENDATION** |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff, Teddy Goodwine, applied for DIB on September 3, 2004, alleging disability beginning March 4, 2006. Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on March 14, 2007 before ALJ Edward T. Morriss, at which Plaintiff (represented by counsel) appeared and testified. On September 20, 2007, the ALJ issued a decision denying benefits. The ALJ found that Plaintiff was not disabled because, under the Medical-Vocational Guidelines (also known as the "Grids") promulgated by the Commissioner, Plaintiff remains able to perform work found in the national economy. See generally 20 C.F.R., Part 404, Subpart P, Appendix 2.

On October 22, 2008, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on November 20, 2008.

## FACTUAL BACKGROUND

Plaintiff was fifty-one years old at the time of the ALJ's decision. He has a high school education[1] with past relevant work as a longshoreman (Tr. 95-96, 106-107, 110). Plaintiff alleges disability since March 2006,[2] due to degenerative disc disease of the lumbar spine (post surgery)(Tr. 38-39, 84, 105).

## ALJ'S FINDINGS

The ALJ found (Tr. 18-26):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since March 4, 2006, the amended alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, a lumbar herniated nucleus pulposus status post discectomy, and borderline intellectual functioning (20 CFR § 404.l520(c)).

---

[1]Plaintiff received a high school diploma, but his school records and new psychological and achievement testing performed in March 2007, shortly before the ALJ's hearing, revealed that he has functional abilities at the fourth to fifth grade level, with a verbal IQ of 81, a performance IQ of 75, and a full scale IQ of 76, placing him in the borderline intellectual functioning range. The ALJ found that Plaintiff has the severe impairment of borderline intellectual functioning. (See Finding 3, below, and Tr. 20, 24).

[2]Plaintiff originally alleged an onset date of March 8, 2004. At the hearing before the ALJ, he amended it to March 4, 2006, the date on which he reached the age of fifty.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to stand, sit, and walk six hours each in an eight-hour workday, to frequently lift and carry 10 pounds with a heaviest weight lifted occasionally of 20 pounds, to frequently bend and stoop, and perform only unskilled work due to allegations of pain.

6. The claimant is unable to perform any past relevant work (20 CFR 404.l565).

7. The claimant was born on March 4, 1956, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 4, 2006 through the date of this decision (20 CFR 404.l520(g)).

## **STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence.[3] See Richardson

---

[3]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

(continued...)

v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## **MEDICAL EVIDENCE BEFORE THE ALJ**

Plaintiff, who reported a history of lower back problems dating back to 1987, sustained a severe back injury in a motor vehicle accident on May 27, 2003, when he was rear-ended by another vehicle while stopped at a traffic light (see Tr. 159, 328-340, 368). His primary care physician, Thomas R. Bolt, M.D., attempted conservative treatment (rest, analgesics, and anti-inflammatory medications) and later referred Plaintiff to a neurosurgeon, Dr. Joseph M. Marzluff (Tr. 232). A July 30, 2003 MRI of Plaintiff's lumbar spine revealed degenerative changes with disc bulges from L3 to S1, an annular disc tear at L5-S1, and foraminal stenosis (Tr. 253-254). Dr. Marzluff treated Plaintiff with conservative care including injections. Plaintiff's condition improved and he was able to return to work by the end of the year (Tr. 241-243).

In March 2004, Plaintiff reported a sudden onset of pain which was reported to be worse than when he was initially injured (Tr. 241). Dr. Marzluff ordered a new MRI, performed on March 19,

---

[3](...continued)
Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

2004, which showed a worsening of Plaintiff's spinal condition with a large disc herniation at L4-5 that correlated with significant neurological deficits and significant changes in symptoms including left leg motor loss (Tr. 240, 248-249). On April 16, 2004, Dr. Marzluff performed a laminectomy and discectomy to correct a left L4-5 disc herniation with compression of the left L5 nerve root (Tr. 251-252).

Following surgery, Plaintiff saw significant improvement in his back and leg pain as well as improvement in the strength of his left foot. Plaintiff indicated to Dr. Marzluff that he did not want to return to work as a longshoreman (Tr. 240). From approximately May to July 2004, Plaintiff participated in physical therapy (Tr. 288-318).

Plaintiff applied for disability retirement with the International Longshoreman's Association ("ILA") Pension Fund. On July 19, 2004, Dr. Marzluff completed a return to work form indicating that Plaintiff was "not disabled" and could return to "light duty with no excessive bending, no lifting more than 25 pounds." (Tr. 358). The ILA, in a letter dated July 30, 2004 replied:

> Due to the nature of our industry, it is virtually impossible for an individual to work with restrictions such as weight limitations, lifting, bending, etc. There is no light-duty or sedentary work within our industry.

(Tr. 357). Plaintiff returned to Dr. Marzluff in August 2004 with complaints of increasing left leg pain. A new MRI of the lumbar spine was taken on August 13, 2004 (Tr. 239, 246-247). Dr. Marzluff completed a Disability Medical Evaluation Form (provided by the ILA Pension Fund), in which he expressed the opinion that Plaintiff was not disabled and could perform "light duty" (Tr. 171).

Dr. Steven Poletti, a spinal surgeon, performed an independent examination on October 13, 2004. He opined (Tr. 170):

5

> I don't think this man is totally disabled. He should be restricted from doing heavy repetitive lifting. Constant bending, twisting, pushing, pulling, or lifting greater than 35-40 pounds is contraindicated on a future basis. Physical therapy could be of some benefit to him in the future.

On December 22, 2004, Plaintiff's primary care physician, Dr. Bolt, also completed an ILA Disability Medical Evaluation Form. He opined that Plaintiff was "totally and permanently disabled." Dr. Bolt noted that Plaintiff's condition had not improved since March 2004, and Plaintiff experienced radicular symptoms of numbness in his toes and had severe hip pain (Tr. 172). Plaintiff's claim for ILA disability was approved shortly thereafter on January 14, 2005 (Tr. 173).

In November 2005, Plaintiff reported an increase in overall back and hip pain and asked Dr. Marzluff to provide documentation for renewal of his ILA disability (Tr. 166). Dr. Marzluff agreed to do so after he reviewed a current MRI of Plaintiff's lumbar spine. Plaintiff underwent an MRI on December 1, 2005 (Tr. 167-168). On January 9, 2006, Dr. Marzluff indicated that the MRI showed only post-operative changes and no evidence of recurrent disc herniation, opined that there was nothing further that he could do for Plaintiff from a surgical point of view, and referred him to another physician for pain management (Tr. 166). In a letter (Tr. 169), Dr. Marzluff wrote:

> Mr. Goodwine has had a full neurological workup. His MRI shows status post left hemilaminectomy at L4-5. There is some enhancing scar in the left lateral recess as seen previously. Negative for recurrent/residual disc protrusion. There are mild degenerative disc changes at L3-4 and L4-5 levels. Changes include annular fissures with the largest centrally at the L3-4 level. He is not a surgical candidate at this time. I would recommend Mr. Goodwine to attend a pain management program. He has been disabled since May of 2003. It would be in Mr. Goodwine's best interest to attend a pain management program close to his home, so he may obtain the best possible result. If you have any questions, please free to contact our office.

In February 2006, Charles Fitts, M.D., a State agency consulting physician, reviewed Plaintiff's file and completed a physical residual functional capacity ("RFC") assessment. He

concluded that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently, and sit and stand/walk about six hours each in an eight-hour workday (Tr. 180-187).

Plaintiff began treatment in April 2006 with pain management specialist J. Edward Nolan, M.D. of Trident Pain Center, PA (Tr. 162-163). Between April and October 2006, Plaintiff rated his pain as a five or six out of ten, on a scale of one to ten, with ten being the worst pain possible. Physical examinations consistently showed reduced or absent deep tendon reflexes in the legs, decreased left lower extremity motor strength (4/5), numbness and altered sensation in the left lumbar dermatomes, and pain. Plaintiff, however, retained normal gait, normal coordination, normal muscle tone in his extremities, and intact cranial nerves. It was noted that Plaintiff's symptoms of low back and hip pain were increased with walking and decreased with sitting. Dr. Nolan diagnosed radiculitis/neuritis in Plaintiff's thoracic and lumbar spine, sciatica, and sacroiliac joint pain. He administered conservative treatment including pain medication, injections, and percutaneous lysis of adhesions in May 2006 (Tr. 146-149, 155, 159-163).

Plaintiff reported temporary pain relief from the steroid injection in May 2006 and Dr. Nolan administered another steroid injection in June 2006 (Tr. 159). In February 2007, Plaintiff reported that he had "almost complete relief with [his] last injection" but "the pain started to return in the last few months." Dr. Nolan administered another injection (Tr. 146-148). Despite these treatments, however, Plaintiff asserted that he was not able to obtain long-lasting relief (Tr. 159-163).

In March 2007 (shortly before the ALJ hearing), Dr. Nolan completed a Treating Physician's Statement form with an RFC assessment (on a form provided by Plaintiff's attorney). Dr. Nolan indicated that Plaintiff was limited to work at the sedentary exertional level; should never bend at the waist; and pain or other discomfort, sleepiness, and side effects of prescription medication would

cause a significant limitation in Plaintiff's concentration or attention to work tasks of fifty percent or more of a workday or work week (Tr. 141-143). He also opined that Plaintiff could not return to work as a longshoreman, Plaintiff's maximum ability to sustain work activity at any exertional level was "part-time" and no significant improvement was expected (Tr. 140-143).

Also in March 2007, Plaintiff underwent a psychological evaluation with L. Randolph Waid, Ph.D. Dr. Waid concluded that Plaintiff was "functioning at the borderline range of intellectual abilities" (Tr. 150-152).

## **TESTIMONY BEFORE THE ALJ**

Plaintiff testified at the hearing that he had some improvement in his left leg symptoms after his surgery in April 2004, but he still had numbness and stiffness in the back of his left leg and always had pain in his back, left hip, and left leg (Tr. 372-374). He had numbness in the big toe on his left foot (Tr. 373-374). Plaintiff reported that Dr. Nolan gave him injections in his back which afforded him relief for one or two months, but that the pain would eventually return (Tr. 372-374). Prescribed medications (including Lortab) made Plaintiff drowsy. He took the pain medicine at bedtime to help him sleep, but he still had problems sleeping due to pain, tossed and turned all night in an attempt to get comfortable, and felt drowsiness and pain the next day (Tr. 374-375).

With regard to functional limitations, Plaintiff testified that he could only stand for about ten minutes before he had to lean on something to take the pressure off of the left side (Tr. 375). His walking was limited to about three blocks (Tr. 375). Sitting in upright chairs was limited to about one hour before he would have to get up and move around (Tr. 376). He said that he could only drive short distances and had to make two stops during a three and one-half hour trip to a relative's funeral in Florida (Tr. 377). Plaintiff testified that he would not be able to sustain an eight-hour workday

8

due to pain (even if he could alternate sitting and standing), and it was necessary for him to lie down on the couch for at least two hours every afternoon in order to relieve his pain (Tr. 376). He also stated that bending at the waist from a standing position was very painful (Tr. 376-377). With regard to daily activities, Plaintiff indicated he served in his church's choir on Sundays, which typically involved services that lasted two to three hours, but if he was there too long, he had difficulty standing up and getting into the service due to pain (Tr. 378). Plaintiff did not believe that he could sustain that type of activity for five days per week (Tr. 379).

## **DISCUSSION**

Plaintiff alleges that the ALJ erred by: (1) rejecting the opinion of Plaintiff's treating physician, Dr. Nolan; (2) relying on the Grids and failing to obtain testimony from a vocational expert ("VE"); and (3) conducting an improper credibility analysis. He argues that this case should be reversed and remanded to the Commissioner for an award of benefits or, alternatively, that it be remanded to the Commissioner and assigned to a different ALJ. The Commissioner contends that the ALJ's decision is supported by substantial evidence and free of legal error.

### A. **Treating Physician**

Plaintiff alleges that the ALJ erred in disregarding the opinion of his treating physician, Dr. Nolan. As noted above, in his March 6, 2007 "Treating Physician's Statement," Dr. Nolan expressed the opinion that Plaintiff's maximum sustained exertional capacity was sedentary (with additional and significant nonexertional limitations in Plaintiff's ability to bend, concentrate, and attend to work tasks) and Plaintiff's ability to sustain work at any exertional level was only part-time. Plaintiff argues that the ALJ erred in determining that Dr. Nolan's clinical findings were "relatively benign" and discounted Dr. Nolan's opinion based on that determination. He also argues that the ALJ erred

9

in discounting Dr. Nolan's opinion based on Dr. Fitts' RFC determination, as it was made prior to the time period of Dr. Nolan's examinations and opinion. The Commissioner contends that the ALJ properly discounted Dr. Nolan's opinion based on Dr. Nolan's own relatively benign clinical findings (including normal gait, normal coordination, intact strength, intact cranial nerves - Tr. 22-23, 149, 159-163); an MRI in December 2005 showing only postoperative changes and no evidence of recurrent disc herniation; and Dr. Fitts' opinion that Plaintiff could perform medium work.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p

provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to give little weight to Dr. Nolan's opinion is not supported by substantial evidence. It appears that the ALJ discounted Dr. Nolan's opinion based on the RFC determination of state agency physician Dr. Fitts (see Tr. 25). In his RFC determination, however, Dr. Fitts did not consider Dr. Nolan's record and opinion as the RFC determination was rendered over a year prior to Dr. Nolan's opinion, a month prior to Plaintiff's alleged onset date, and two months prior Plaintiff's first appointment with Dr. Nolan. The ALJ discounted Dr. Nolan's opinion because he found that Dr. Nolan's clinical findings were "relatively benign" (Tr. 25). This assessment, however, does not appear to take into account Dr. Nolan's repeated observations that Plaintiff had decreased lower extremity motor strength, moderate to severe left lumbar radiculitis, reduced or absent deep tendon reflexes, numbness and alternated sensation in the left lumbar dermatomes, and pain with physical examination. Although the ALJ appears to discount Dr. Nolan's opinion because Plaintiff's December 2005 MRI showed only postoperative changes, the MRI also revealed moderate degenerative disc disease at L4-5 (Tr. 167) and annular fissures at L3-4 (Tr. 168).

### B.    Grids/VE

Plaintiff argues that the ALJ erred by relying on the medical-vocational guidelines and failing to obtain the testimony of a VE. He asserts that VE testimony was necessary because the ALJ found that his borderline intellectual functioning (assessed by Dr. Waid) was a severe impairment (Tr. 20), and that such a mental impairment is nonexertional.[4] The Commissioner contends that the ALJ's

---

[4]Plaintiff also argues that Dr. Nolan's assessment of functional loss included significant non-exertional impairments (no bending and the loss of concentration and attention) which required
(continued...)

decision shows that he considered and accounted for Plaintiff's impairment of borderline intellectual functioning by limiting him to only unskilled work (Tr. 21).

When a claimant: (1) suffers from a nonexertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the Grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant. See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Hammond v. Heckler, 765 F.2d 424, 425-26 (4th Cir. 1985); Cook v. Chater, 901 F. Supp. 971 (D.Md. 1995). A nonexertional impairment is an impairment which is present whether the claimant is attempting to perform the physical requirements of the job or not. See Gory v. Schweiker, 712 F.2d 929 (4th Cir. 1983); see also 20 C.F.R. § 404.1569a. Every nonexertional condition does not, however, rise to the level of a nonexertional impairment. The proper inquiry is whether there is substantial evidence to support the finding that the nonexertional condition affects an individual's residual capacity to perform work of which he is exertionally capable. Walker, 889 F.2d at 49; Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1984).

The ALJ's decision to rely on the Grids and not obtain testimony from a VE is not supported by substantial evidence. Here, the ALJ specifically found that Plaintiff suffered from the severe nonexertional impairment of borderline intellectual functioning (see Finding 3 - Tr. 20). The Commissioner contends that the ALJ's decision to rely on the Grids is supported by his finding that

---

[4](...continued)
VE testimony. As the ALJ did not properly evaluate Dr. Nolan's opinion, it is impossible to determine from the record whether such nonexertional conditions rise to the level of nonexertional impairments. If they do rise to such a level, it may be necessary to obtain VE testimony.

Plaintiff's mental impairment restricted him to unskilled work. Review of the ALJ's decision, however, reveals that the ALJ did not make any determinations as to the effect of Plaintiff's borderline intellectual functioning on his ability to perform work, but instead found that Plaintiff's pain restricted him to unskilled work (see Tr. 21 and 25). Therefore, it is not possible based on the record to determine whether Plaintiff's ability to perform light, unskilled work is significantly affected by his significant nonexertional impairment of borderline intellectual functioning.[5]

---

[5]The undersigned does not recommend a remand for an award of benefits (as requested by Plaintiff) at this time. Before a definitive decision can made on Plaintiff's claim, an appropriate review and analysis must be made of the evidence and of Plaintiff s claims by the ALJ before the Court can reach a decision on whether substantial evidence supports the decision rendered. See Vertigan v. Halter, 260 F.3d 1044, 1054 (9th Cir. 2001)(Remand for an award of benefits is only appropriate "where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed"); Sorenson v. Bowen, 888 F.2d 706, 713 (10th Cir.1989)("Outright reversal and remand for immediate award of benefits is [only] appropriate when additional fact finding would serve no useful purpose").

Plaintiff alternatively requests that the Court order that the case be remanded to a different ALJ because Judge Morriss "never" calls a VE unless required to by the Appeals Council or the District Court. ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased. This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999) (citation and internal quotation marks omitted). An ALJ should always strive to be non-confrontational and even-tempered, but, as the courts have stated "'expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women ... sometimes display' do not establish bias. Rather, [a plaintiff is] required to show that the ALJ's behavior, in the context of the whole case, [is] 'so extreme as to display clear inability to render fair judgment.'" Rollins v. Massanari, 261 F.3d 853 (9th Cir. 2001)(citations omitted)(quoting from Liteky v. United States, 510 U.S. 540, 551, 555-56 (1994)). But see Keith v. Massanari, 2001 WL 965106 (7th Cir., Aug. 23, 2001)[Table](case may be reversed upon record proof raising appearance of bias). Although Plaintiff disagrees with the ALJ's findings and decision to not obtain VE testimony, he has pointed to nothing in the record that shows that the ALJ is unable to render a fair judgment in this case.

### C. **Credibility**

Plaintiff asserts that the ALJ conducted an improper credibility analysis based on his participation in his church choir. The Commissioner contends that the ALJ properly considered the medical and non-medical evidence in assessing the credibility of Plaintiff's complaints.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a claimant's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Contrary to Plaintiff's contention that the ALJ improperly discounted his credibility based solely on his participation in his church choir, review of the ALJ's decision reveals that the ALJ considered the objective, clinical medical evidence; the treating physician's examination and treatment notes and opinions; and Plaintiff's own testimony. The ALJ properly followed the two-step process in evaluating Plaintiff's credibility and discussed the specific factors set forth in SSR 96-7p (see Tr. 21-25).

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to properly consider the opinion of Plaintiff's treating physician (Dr. Nolan) and, if necessary, to continue the sequential evaluation process including consulting a VE.

It is, therefore, RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and the case be remanded to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

January 19, 2010
Columbia, South Carolina